TRUTH, an unincorporated association; Sarice Undis, a minor, by and through her father, Larry Undis; Julianne Stewart, a minor, by and through her parents, Paul and Anna Stewart, Plaintiffs–Appellants,

v.

KENT SCHOOL DISTRICT; Barbara Grohe, Superintendent of Kent School District; Mike Albrecht, Principal of Kentridge High School; Eric Anderson, Assistant Principal of Kentridge High School, in their official capacities, Defendants–Appellees.

No. 04–35876.

United States Court of Appeals, Ninth Circuit.

Dec. 22, 2008.

Keith A. Kemper, Esq., Kyle D. Netterfield, Esq., Ellis Li & McKinstry, PLLC, Seattle, WA, Benjamin W. Bull, Esq., Gary S. McCaleb, Esq., Jordan W. Lorence, Esq., Alliance Defense Fund, Scottsdale, AZ, Timothy Chandler, Alliance Defense Fund, Folsom, CA, Robert H. Tyler, Esq., Advocates for Faith and Freedom, Murrieta, CA, Nathan W. Kellum, Esq., Alliance Defense Fund, Memphis, TN, for Plaintiffs–Appellants.

Michael Barry Tierney, Esq., Michael Brian Harrington, Esq., Mercer Island, WA, Jane M. Whicher, Esq., Port Townsend, WA, for Defendants–Appellees.

Before: J. CLIFFORD WALLACE, KIM McLANE WARDLAW, and RAYMOND C. FISHER, Circuit Judges.

Order; Concurrence by Judge WARDLAW; Dissent by Judge BEA

The order denying the petition for rehearing and suggestion for rehearing en banc in this case, filed on November 17, 2008, along with the separate concurrence of Judge Fisher and Judge Wardlaw, and the dissent by Judge Bea, are all designated for publication.

**ORDER**

Judge Wardlaw and Judge Fisher have voted to deny the Petition for Rehearing En Banc, and Judge Wallace so recommends.

The full court was advised of the Petition for Rehearing En Banc. A judge of the court requested a vote on whether to rehear the case en banc, but the request failed to receive a majority of the votes of the nonrecused active judges in favor of en banc rehearing.

Appellant's Petition for Rehearing En Banc is DENIED.

WARDLAW and FISHER, Circuit Judges, concurring in the denial of rehearing en banc:

We write to address significant inaccuracies in Judge Bea's dissent from rehearing en banc.

As the unanimous opinion made clear, this case is not about the school's recognition of Truth as a school group, but the school creating Truth "as a *school-sponsored* group." *Truth v. Kent Sch. Dist.,* 542 F.3d 634, 648 (9th Cir.2008). Our

concurrence amplified this point, explaining that the government is not required to subsidize expression, including expression through expressive association, within limited forums of its own creation as long as it restricts access to the forum according to reasonable, viewpoint-neutral rules. *See* Eugene Volokh, *Freedom of Expressive Association and Government Subsidies*, 58 STAN. L. REV. 1919, 1938–44 (2006) (arguing that the government is not obligated to support expressive association, and only must not discriminate based on viewpoint).

Additionally, we have not created a circuit split with *Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir.2006). In *Walker*, the Seventh Circuit held that the Christian Legal Society showed a likelihood of success on free speech and expressive association claims. In our concurrence, we noted that the Seventh Circuit explicitly stated "that it could not even determine, on the limited record before it, whether the university had created an open, limited, or nonpublic forum." *Truth*, 542 F.3d at 652 n. 1 (Fisher & Wardlaw, JJ., concurring). We did not, as Judge Bea asserts, say that the Seventh Circuit applied strict scrutiny to SIU's alleged violation of CLS's expressive association rights *"because* it could not determine" what type of forum was created. Dissent at 16602 (emphasis added). The unanimous opinion's holding is entirely consonant with the Seventh Circuit: we agreed that viewpoint discrimination is always prohibited *no matter what type of forum* exists and remanded Truth's claim that Kent School District applied its nondiscrimination policy in a selective and discriminatory manner for further investigation by the district court.

BEA, Circuit Judge, dissenting from the denial of rehearing en banc, joined by O'SCANNLAIN, Circuit Judge:

A Christian Bible study group named "Truth" sought official recognition by a high school. Such recognition would entitle the group to use school rooms to hold lectures and discussions regarding the Bible and its teachings. Any group so recognized could also apply to use school materials and supplies to spread its message, at reduced prices. The school refused official recognition to Truth because it viewed Truth's requirement that members comply " 'in good faith with Christian character, Christian speech, Christian behavior, and Christian conduct as generally described in the Bible' " as being discrimination based on religion. *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 639 (9th Cir.2008).

The government's ability to regulate membership in a discussion group is the ability to regulate the viewpoint of the group. This case merited en banc review because a state school district should not require a Christian Bible study group to allow into its group non-Christians and Christians alike, as a condition for providing its school facilities and support. Yet this is what the majority concurrence [1] now holds. It reached that result by confusing the school's viewpoint-neutral right to limit speech in a limited public forum with a necessarily viewpoint-affecting regulation of the right freely to associate to express one's views.

---

1. What I object to is contained in the panel's "concurrence" signed by Judges Fisher and Wardlaw. This is no standard concurrence, however, because two of the three members of the panel concur in it. Thus, it is the opinion of the panel on this issue and creates binding precedent. *See* G.O. 4.5 ("[T]he determination of each appeal ... shall be evidenced by a written disposition concurred in by a majority of the panel assigned to act thereon.")

No one argues a school cannot limit *what* topics student groups can discuss on campus. It is quite another thing to dictate *who* must be allowed into membership, so to affect the group's expression of viewpoints on such topics.

Unfortunately, the majority concurrence does just that: it tells the Christian Bible study group that because its membership is open only to those who comply " 'in good faith with Christian character, Christian speech, Christian behavior, and Christian conduct as generally described in the Bible,' " the School District can refuse to extend the benefits which go with its official recognition of the Club. *Truth,* 542 F.3d at 639. The majority concurrence does this by mistakenly applying the law relating to permissible restrictions in "limited public forums," rather than applying the required law of "expressive associations." Because the majority concurrence makes circuit law, and because it is contrary to Supreme Court rulings and creates a circuit split with the Seventh Circuit, this case merited en banc review; I must dissent from the denial of rehearing en banc.

## Discussion

The majority concurrence seems to reason that if the school can reasonably regulate the topics to be discussed by a group or the groups who can discuss such topics, it can regulate the membership of such groups.

Yet regulation of such topics and groups can never be based on the *viewpoints* to be expressed. That much the majority concurrence admits.[2] That is, the school

could decide to ban all groups that wish to speak on abortion, on the ground the subject is not within the description of the purpose of a limited public forum dedicated to discussion of campus activities. What it could not do is allow speech only to pro-life speakers, but not allow it to proponents of abortion on demand.

Government action that infringes on the right of expressive association is subject to strict scrutiny: The government must show that its restriction is "adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (internal citation and quotation marks omitted). By contrast, government action that infringes on the right of free speech in a limited public forum such as a school, is subject to a lower level of scrutiny. The government can "reasonably" regulate topics so long as the restrictions are viewpoint neutral. It can also regulate the time, place and manner of speech. *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828–29, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). By applying the limited public forum test to the Club's right to decide who its members will be, the majority concurrence has lessened the scrutiny placed on restrictions of the right of expressive association.

Henceforth, school groups in this circuit will not be able to exclude unwanted members from groups formed for expressive association, if the school authorities have some "reasonable" basis upon which to limit their ability to exclude members.

---

**2.** The majority states: "As our opinion explains, when the state creates a *limited* public forum, like the ASB program at issue here, it may restrict access to that forum so long as the restrictions are 'viewpoint neutral and reasonable in light of the purpose served by the forum,' even if these rules have the effect of limiting a group's ability to engage in protected speech, such as the right to speak, publish on a particular topic or engage in expressive association." *Truth,* 542 F.3d at 651 (Fisher, J. and Wardlaw, J., concurring).

Such denial of the groups' right of exclusion will neither have to be justified by any compelling interest of the school, nor narrowly tailored to restrictions needed only to advance that interest, contrary to Supreme Court precedent.

## I. The majority concurrence's holding fails to follow binding Supreme Court precedent.

The essential problem with the majority is that it applies a *Rosenberger* "free speech" analysis (when the content of the speech is known and is outside a reasonably set topic area) to what is a *Dale* "freedom of association" case (which deals with the formulation of the content of such speech).

The majority concurrence held the School District was restricting only "access" to a limited public forum because of the subject matter to be discussed. *See Rosenberger*, 515 U.S. at 828–38, 115 S.Ct. 2510 (holding that in a limited public forum such as a high school, the school can "reasonably" regulate topics of discussion so long as the restrictions are viewpoint neutral); *Truth*, 542 F.3d at 651 (Fisher, J. and Wardlaw, J., concurring). But this is not what happened. The School District told the Club that it could not be recognized because it required its members to comply " 'in good faith with Christian character, Christian speech, Christian behavior, and Christian conduct as generally described in the Bible.' " *Truth*, 542 F.3d at 639. Thus, it was telling the Club how its expression must be determined. In doing so, the majority's holding flies directly in the face of Supreme Court precedent. "The forced inclusion of an unwanted person [Here, a non-Christian in a Christian Bible study group] in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the

group's ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 648, 120 S.Ct. 2446.

In *Dale*, a scout leader was fired from the Boy Scouts once the Scouts discovered Dale was actively involved in the homosexual rights movement. 530 U.S. at 644–45, 120 S.Ct. 2446. The Court held "Dale's presence in the Boy Scouts would, at the very least, force the organization to send a message, both to the youth members and the world, that the Boy Scouts accepts homosexual conduct as a legitimate form of behavior." *Id.* at 653, 120 S.Ct. 2446. Thus, Dale's presence would "interfere with the Boy Scouts' choice not to propound a point of view contrary to its beliefs." *Id.* at 654, 120 S.Ct. 2446. *Dale* is not only illuminating, it is determinative of this case. The same test applied in *Dale* should apply here.

In *Dale*, the Court stated:

In *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), we observed that implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas. *See ibid.* (stating that protection of the right to expressive association is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority). Government actions that may unconstitutionally burden this freedom may take many forms, one of which is intrusion into the internal structure or affairs of an association like a regulation that forces the group to accept members it

does not desire. Forcing a group to accept certain members may impair the ability of the group to express those views, and only those views, that it intends to express. Thus, freedom of association plainly presupposes a freedom not to associate.

*Id.* at 647–48, 120 S.Ct. 2446 (citations, internal quotation marks, and brackets omitted).

As was the case of the Boy Scouts, the school district here "at the very least" forces the Christian Bible study group to send a message that its agenda, discussions, and meetings can be framed, and their content determined, by non-Christians.

Another form of interference with the right of expressive association was involved in *Hurley v. Irish–American Gay, Lesbian, and Bisexual Group of Boston,* 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). There, Massachusetts law was applied to force the inclusion of homosexuals and bisexuals to participate in a St. Patrick's Day parade organized by a separate group. The Court found this forced association would alter the parade organizers' intended message. *Id.* at 573, 115 S.Ct. 2338. Hence, the forced presence of the homosexual contingent would have a substantial effect on the content of the association's expression and violated the association's First Amendment right to expressive association. If forced inclusion of unwanted marchers has a "substantial effect" on the group's intended message, how much more so does the forced inclusion of non-believers to direct the message given by a religious group to its members and the public?

Further, the majority concurrence fails to discuss the seminal case of *Democratic Party of United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1980), where the Court held Wisconsin could not order the Democratic National Convention to have the Wisconsin delegation vote for the candidate who had won the Wisconsin primary. Why? Because the Wisconsin primary was an "open" primary, which allowed *all* voters, not just publicly professed and registered Democrats, to vote for Democratic candidates. Rule 2A of the National Democratic Convention allowed for seating of (and voting by) delegates only if the delegates were publicly professed and registered Democrats. *Democratic Party,* 450 U.S. at 109, 101 S.Ct. 1010. The Court said:

This First Amendment freedom to gather in association for the purpose of advancing shared beliefs is protected by the Fourteenth Amendment from infringement by any State. And the freedom to associate for the "common advancement of political beliefs" necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.

*Id.* at 121–22, 101 S.Ct. 1010 (citations omitted).

In *Democratic Party,* the National Democratic Party "expressed the concern that 'a full opportunity for all Democrats to participate is diluted if members of other political parties are allowed to participate in the selection of delegates to the Democratic National Convention.'" *Id.* at 116–17, 101 S.Ct. 1010.

Change the name "Democrat" to "Christian" and the same reasoning applies here. A full opportunity for professed Christians to participate in the direction of Club affairs is "diluted" if members of other faiths-or persons without any religious faith-must have a voice in the group's expression.

Just as the issue in *Democratic Party* was whether the State could compel the

National Democratic Party to seat a delegation chosen in a way that violated the Party's rules, the issue here is whether the School District can, as a condition of its "acknowledgment" (recognition), compel the Club to choose its members in a way that violates the Club's rules. The answer was "NO" in *Democratic Party*, at 126, 101 S.Ct. 1010, and should be "NO" here.

## II. Governmental infringements upon the right to expressive association are reviewed under strict scrutiny, not a limited public forum analysis.

Unfortunately, the majority concurrence ignored the reasoning which underpins the right of expressive association: that it helps to protect the ability to exercise all the other First Amendment rights, such as freedom of speech and the free exercise of religion:

> The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints. But the freedom of expressive association, like many freedoms, is not absolute. We have held that the freedom could be overridden by regulations adopted to serve *compelling state interests*, unrelated to the suppression of ideas, that cannot be achieved through means *significantly less restrictive* of associational freedoms.

*Dale*, 530 U.S. at 647–48, 120 S.Ct. 2446 (2000) (citations, internal quotation marks, and brackets omitted) (emphasis added).

Despite this clear mandate, the majority concurrence stated that "when the state creates a *limited* public forum, ... it may restrict access to that forum so long as the restrictions are 'viewpoint neutral and reasonable in light of the purpose served by the forum,' even if these rules have the effect of limiting a group's ability to ... engage in expressive association." *Truth,* 542 F.3d at 651 (Fisher, J. and Wardlaw, J., concurring). Further, the majority concurrence holds that "we apply the lesser standard of scrutiny, even if the same burden on a group's rights *outside* a limited public forum would be subject to strict scrutiny." *Id.* at 652 (Fisher, J. and Wardlaw, J., concurring). The majority concurrence relies on *Rosenberger* for this proposition.

In *Rosenberger*, the University of Virginia withheld authorization for payments to a printer on behalf of a student-run newspaper because the newspaper promoted religious beliefs. 515 U.S. at 827–28, 115 S.Ct. 2510. There was no claim the University required the group to determine what it wanted printed by persons who did not share the group's beliefs. The newspaper sued, raising *only* a free speech claim, *not* an expressive association claim. *Id.* Thus, the majority concurrence's reliance on *Rosenberger* is misplaced.

Furthermore, the majority concurrence's opinion causes an inter-circuit split with the Seventh Circuit's decision in *Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir.2006). In *Walker*, the dean of a public law school revoked the official status of the Christian Legal Society chapter at the law school because the Society's membership policy, which excluded from membership those who refused to sign a statement of faith, violated the law school's anti-discrimination policy. 453 F.3d at 857. Although the Society allowed anyone to attend its meetings, only those who signed the statement of faith were permitted to be voting members and officers of the organization. *Id.* at 858.

The Society sued, raising expressive association and free speech claims. The court analyzed the two claims separately, applying strict scrutiny to the expressive

association claim and the limited public forum analysis to the free speech claim. *Walker*, 453 F.3d at 861–67.

The *Walker* court reversed the district court's denial of an injunction restoring the official status of the Society. It first ruled the Society had demonstrated probability of success on its "expressive association" claim; the law school had withdrawn official status solely on the grounds that the Society required its controlling membership and officers to abjure homosexual conduct, a claimed violation of the school's anti-discrimination rules. As such, the school's rules were found to violate the Society's right to select its members who would significantly affect the Society's expression.

The *Walker* court then turned to the free speech claim. It held that even if official status recognition afforded only "limited public forum" availability, the record compelled a finding the Society was not granted equal protection. The school had allowed Muslim, Adventist and other groups to exclude controlling membership on the basis of beliefs conflicting with the central tenets of the organizations.[3] The circuit court issued an injunction ordering restoration of the Society's official status.

Curiously, the majority concurrence acknowledges the Seventh Circuit applied strict scrutiny to the expressive association claims, but claimed it did so because it could not determine whether the university had created an open, limited or nonpublic forum. *Truth*, 542 F.3d at 652 n. 1 (Fisher, J. and Wardlaw, J., concurring) ("Although the Seventh Circuit applied strict scrutiny in addressing this claim, it notably stated that it could not even deter-

mine, on the limited record before it, whether the university had created an open, limited, or nonpublic forum."). This is an error that can be made only by a partial reading of the *Walker* decision. The *Walker* court actually wrote:

> Whether SIU [the school in question]'s student organization forum is a public, designated public, or non-public forum is an inquiry that will require further factual development, and that is a task properly left for the district court. *But even assuming at this state of the litigation that SIU's student organization forum is a non-public forum-making the lowest level of scrutiny applicable—we believe CLS has the better of the argument.*
>
> \* \* \*
>
> Whether the policy is reasonable in light of the purposes the forum serves cannot be determined on this record because we do not know precisely what those purposes are (we could speculate, but that would be inappropriate). *We need not reach this aspect of the inquiry, however, given our conclusion that CLS has demonstrated a likelihood of success on its claim that SIU is applying its policy in a viewpoint discriminatory fashion. SIU has singled out CLS for derecognition. The record may be spartan, but every part of it right now points to success for CLS.*

453 F.3d at 866–67 (emphasis added).

The *Walker* court determined that even if the free speech claim were tested under the lowest scrutiny of the "reasonableness" test, the Society was still entitled to its injunction. To say that the Seventh Circuit did not rule on the expressive associa-

---

**3.** Of course, the majority's opinion differs from *Walker*'s in that it remanded to the district court for factual development of whether the School District was denying Equal Protection rights to Truth by "acknowledging"

groups which discriminated on bases other than religion (i.e., gender) which bases were also prohibited by the school discrimination policy.

tion claim because it could not rule on the free speech claim is not only a *non sequitur* because the two claims are distinct; it is a flat-out misrepresentation. *Walker* is on all fours with our case. The majority concurrence clearly establishes a circuit conflict.

## Conclusion

The majority concurrence correctly recognized that Free Speech regulation of a school's group cannot turn on the viewpoint the group expresses. But by permitting the school to regulate the *membership* which controls the group's expression, it ineluctably controls the group's viewpoint—"personnel *is* policy."[4] From this error, the majority concurrence logically assesses the school action by a "reasonable relation" test rather than the "strict scrutiny" test, which expressive association requires under the First Amendment. For both these reasons, and because the majority concurrence's opinion clashes with a Seventh Circuit case involving similar non-Christian membership requirement in a Christian group, en banc rehearing should have been granted. I must respectfully dissent from the order denying en banc review.

---

**4.** Herbert E. Meyer, *Personnel is Policy*, Feb. 4, 2007, http://www.americanthinker.com/blog/2007/02/personnel_is_policy.html, referring to Herbert E. Meyer in the Reagan administration. For a more recent thought in the same vein, *see* Thomas B. Edsall, *The Obama Test: Personnel is Policy*, October 24, 2008, http://www.huffingtonpost.com/2008/10/24/the-obama-test-personnel_n_137757.html.